# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

### Civil Action No. 8:17-cv-00523-RAL-AAS

ADVANTAGE TRIM & LUMBER COMPANY, INC., a Florida corporation;

      Plaintiff,

v.

ROYAL BANK OF CANADA, a Canadian-chartered bank;

      Defendant.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Respectfully submitted,

DAVID C. SILVER
Florida Bar No. 572764
E-mail:  DSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail:  JMiller@silverlaw.com
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:  (954) 755-4799
Facsimile:    (954) 755-4684

*Counsel for Plaintiff, Advantage Trim & Lumber Co.*

Plaintiff, ADVANTAGE TRIM & LUMBER COMPANY, INC., a Florida corporation ("Plaintiff"), by and through undersigned counsel, hereby submits the following Memorandum of Law in Opposition to the motion filed by Defendant ROYAL BANK OF CANADA, a Canadian-chartered bank ("Defendant" or "RBC") [Docket Entry No. ("DE") 23], seeking dismissal of the Amended Complaint [DE 20].   For the reasons set forth below, Defendant's motion should be denied.[1]

## I.      FACTUAL BACKGROUND AND CASE OVERVIEW

According to published reports, a Canadian crime syndicate operating in conjunction with one or more employees at multiple banks enacted a scheme wherein the bank employees provided fraudulently-issued credit cards to the criminal syndicate, which used the cards to obtain from United States-based flooring retailers hardwood flooring that was later transported to Canada for illegal use or re-sale in secondary markets.[2]   RBC was among the banks working with, and providing vital tools of theft to, the criminal syndicate.[3]   As a result of the fraud that persisted at RBC and its fellow participating banks, several hardwood flooring retailers -- including Plaintiff -- were victimized by this scam (the "Flooring Scam") and have suffered hundreds of thousands of dollars, if not millions of dollars, in damage.[4]   RBC's participation in the Flooring Scam, and the bank's failure to create or enforce adequate policies and procedures

---

[1] Paragraph references to Plaintiff's Amended Complaint are stated herein as "AC ¶ ___." Page references to Defendant's Motion to Dismiss are stated as "RBC Motion at ____." Capitalized terms and abbreviations have the same scope and meaning as in the Amended Complaint.

[2] AC ¶ 1.

[3] AC ¶ 3.

[4] AC ¶ 4.

to prevent the fraud in which its employees participated and which caused harm to innocent victims like Plaintiff, has caused widespread harm to multiple victims.[5]

Vital to the Flooring Scam was the Canadian Crime Syndicate's ability to obtain flooring materials from a flooring retailer under the guise of conducting a legitimate transaction.[6]  To do that, the Canadian Crime Syndicate had to dupe a flooring retailer into believing that the credit cards being offered for payment were legitimate and would serve as a tool for payment to the retailer.[7]  Supplying the fraudulent credit cards is where RBC indispensably supported the Flooring Scam.[8]  Without the participation of the bank employees providing the fraudulent credit cards -- and RBC's failed oversight in preventing such actions from being taken by its employees -- this scheme would have quickly failed.[9]

One or more employees at RBC created Visa credit cards that were fraudulently tied to viable bank accounts; and those cards were then provided to the Canadian Crime Syndicate so it could effectuate the mechanics of the Flooring Scam.[10]  The fraudulent credit cards were only able to be issued by bank employees and insiders, whose assistance in the Flooring Scam was vital to its survival.[11]  In assisting and supporting the Flooring Scam, RBC knew or should have known that its representatives and agents were creating those fraudulent credit cards and supplying them to the Canadian Crime Syndicate, but RBC did not have in place adequate

---

[5] AC ¶ 5.

[6] AC ¶ 23.

[7] AC ¶ 24.

[8] AC ¶ 25.

[9] AC ¶ 26.

[10] AC ¶ 27.

[11] AC ¶ 33.

SILVER LAW GROUP
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

internal controls to monitor and halt the fraudulent activity.[12]  As a result of RBC's acts (creating the false credit cards for the Canadian Crime Syndicate) and omissions (failing to prevent the creation and distribution of the false credit cards to the Canadian Crime Syndicate), several flooring merchants including Plaintiff were unsuspectingly lured into fulfilling fraudulent orders for flooring on which they would not be paid and which cost the merchants hundreds of thousands of dollars in losses.[13]  Upon information and belief, the law firm of McGuire Woods LLP represents multiple banks that participated in the Flooring Scam, and Plaintiff has identified to McGuire Woods numerous victims of the inter-connected scam as well as the manner and extent of the harm that has been inflicted upon those victims.  For privacy reasons, those additional victims were not named in the Amended Complaint.[14]

Plaintiff is one of the many victims of the Canadian Crime Syndicate and the Flooring Scam.  As a result of the fraud, Plaintiff did not receive payment for the orders it had sourced and fulfilled for members of the Canadian Crime Syndicate, suffering over $372,000.00 in damages as a result.[15]  Additionally, Plaintiff incurred from its suppliers, its third-party credit card processor, and its bank several thousand dollars of penalties and costs for processing, sourcing, and fulfilling the fraudulently-ordered flooring.[16]

RBC knew or should have known that its employees were materially fueling the Flooring Scam, but RBC did not take adequate measures to halt that harmful activity before Plaintiff was

---

[12] AC ¶ 34.

[13] AC ¶ 35.

[14] AC ¶ 36.

[15] AC ¶ 52.

[16] AC ¶ 53.

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

victimized by the Scam.[17]   RBC's woeful oversight over its employees served to support the Flooring Scam and served to inflict economic harm upon Plaintiff and other victims of the Flooring Scam.[18]   Had RBC dutifully and expeditiously acted to stop its employees from fueling the engine that propelled the Canadian Crime Syndicate, the Flooring Scam would have been halted at a much earlier stage; and Plaintiff and many other victims would not have suffered the extensive damages they bore from the Flooring Scam.[19]

To seek redress for its harm, Plaintiff filed this lawsuit.[20]   RBC has asked that the Court refuse to even recognize the validity of Plaintiff's claim -- asserting that numerous fatal flaws pervade Plaintiff's pleading.[21]   According to RBC, the alleged flaws in Plaintiff's claim are so ubiquitous that Plaintiff should not even be permitted an opportunity to explain or fix those flaws.   A cursory review of the Amended Complaint, however -- and the factual matters that RBC has withheld from the Court -- demonstrate that Plaintiff has properly stated its claim and should not be prevented from pursuing its requested relief in this Court.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007)).   There is no requirement of probability, or of any detail -- just plausibility.   *Twombly* did not adopt a heightened pleading standard, did not change the requirement that a complaint need only

---

[17] AC ¶ 54.

[18] AC ¶ 55.

[19] AC ¶ 56.

[20] DE 1, 20.

[21] DE 23.

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

include a short and plain statement of the claim, did not alter the point that "detailed factual allegations are not required," and did not change the rule that a complaint may proceed if it presents "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the claim, even if the court believes that "actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* at 555-556. All that *Twombly/Iqbal* did was move the bar from "conceivable" to "plausible" as to whether a claim for relief has been stated.

## III.   PLAINTIFF HAS PROPERLY INVOKED THIS COURT'S SUBJECT MATTER JURISDICTION BY ADEQUATELY ALLEGING THE AMOUNT IN CONTROVERSY

In its Motion to Dismiss, RBC argues that Plaintiff has not adequately alleged in its Amended Complaint that the amount in controversy satisfies the Court's subject matter jurisdiction threshold of Seventy-Five Thousand Dollars ($75,000.00).[22]

> If a defendant challenges the amount in controversy in an action that begins in federal court, the plaintiff need only establish the possibility that she could recover more than $75,000. Phrased differently, the defendant's motion to dismiss must demonstrate to a legal certainty that the plaintiff cannot recover more than $75,000.[23]

Because RBC's attack on the Amended Complaint rests upon faulty factual and legal grounds, RBC's motion must be denied.

First, to support its argument, RBC cites to caselaw for the proposition that "*[i]n an action against multiple unrelated defendants, a plaintiff relying on § 1332 must satisfy the amount-in-controversy requirement with respect to each individual defendant, unless the defendants may be held jointly liable to the plaintiff.*" However, that caselaw is entirely inapposite in this matter. This is not a lawsuit "*against*

---

[22] RBC Motion at 8-9.

[23] *O'Toole v. Napa Home and Garden Inc.*, 2012 WL 12904228, *1 (M.D. Fla. June 26, 2012) (emphasis added).

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

*multiple unrelated defendants*"; this is a lawsuit against just one defendant (RBC) from whom the entire amount in controversy is sought.

Moreover, RBC concedes in its motion that Plaintiff indeed alleged damages of over $372,000.00 as a result of the fraud of which RBC was a vital cog.[24] While RBC self-servingly argues that "*Plaintiff should not be permitted to plead damages based on transactions for which RBC-issued credit cards have no involvement in an attempt at satisfying the requisite amount in controversy for jurisdiction in this Court*",[25] that argument is misplaced and belies the allegations in the Amended Complaint that RBC -- by its actions in fueling the Canadian Crime Syndicate and by its failure to halt the Canadian Crime Syndicate before additional harm befell Plaintiff -- is responsible for the full extent of Plaintiff's damages.[26] To the extent RBC is arguing that the full extent of Plaintiff's damages might be subject to set-off by recoveries from other actors in the Canadian Crime Syndicate, that argument is legally untenable and does not establish to a legal certainty that Plaintiff has not satisfied the $75,000.00 amount-in-controversy requirement of 28 U.S.C. § 1332.[27] "The amount in controversy fixes when the action begins. That Florida law might require a set-off at final judgment that reduces [a plaintiff's] final recovery to or below $75,000 does not affect the jurisdictional amount in controversy at the outset of litigation."[28]

---

[24] RBC Motion at 5 (citing Plaintiff's allegation of over $372,000 in damages [AC ¶ 52]). *See also*, AC ¶ 12 (allegation of more than $372,000 in damages); AC ¶ 70 ("*Plaintiff was defrauded of several hundred thousand dollars . . . .*").

[25] RBC Motion at 9.

[26] *See, e.g.*, AC ¶ 76 ("*Defendant is liable for all damages directly and proximately caused to Plaintiff through the Canadian Crime Syndicate's fraudulent actions and omissions.*"). *See also*, AC ¶¶ 5, 54-57.

[27] *Seguros Comercial America v. Hall*, 115 F.Supp.2d 1371, 1380-1381 (M.D. Fla. 2000) ("[W]ith respect to the amount in controversy issue, the Court should not dismiss an action for failure to satisfy the amount-in-controversy requirement unless it appears to a "legal certainty" that plaintiffs' claims are actually for less than the jurisdictional amount.").

[28] *O'Toole, supra* at *1 (citation omitted) (denying Motion to Dismiss for failure to establish to a legal certainty that the plaintiff could not recover more than $75,000.00).

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

Plaintiff has properly invoked subject matter jurisdiction, and RBC's Motion on this basis must be denied.

## IV. PLAINTIFF HAS PROPERLY ALLEGED PERSONAL JURISDICTION OVER DEFENDANT

### A. RBC's Extensive Business Presence in Florida Satisfies General Jurisdiction under the Florida Long-Arm Statute

Just as with its flawed attack upon subject matter jurisdiction, RBC has presented a flawed attack upon this Court's jurisdiction over RBC's person. RBC asserts that it does so little business in this jurisdiction that it would be unjust for the Court to exercise personal jurisdiction over RBC.[29] However, RBC's argument conveniently ignores the wide-ranging contact it has with customers in the state of Florida and ignores the relevant case law supporting the Court's exercise of jurisdiction over RBC in this instance.

As RBC points out in its Motion, Fla. Stat. § 48.193(2) ["Florida's Long-Arm Statute"]:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.[30]

RBC then states that it "*has a limited United States presence, let alone any significant presence in Florida.*"[31] In painting itself as being a stranger to the state of Florida and, more broadly, to business transactions in the United States; RBC conceals and ignores the extensive, symbiotic relationship it has with fellow financial institutions that -- according to RBC's own website -- allows RBC customers to use any one of more than 7,100 automated teller machines in the United States

---

[29] RBC Motion at 16.

[30] RBC Motion at 15.

[31] RBC Motion at 16.

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

without a fee.  Attached to Plaintiff's counsel's declaration filed simultaneously herewith is a printout from a page on RBC's website labeled: "RBC Cross-Border Banking - U.S. Banking for Canadian: Bank on Both Sides of the Border with Ease," which plainly states:

> *[Y]ou can use your RBC Bank Visa Debit card at any of the more than 7,100 PNC Bank ATMs to access funds from your checking or savings account - with no fees!  Or, use your card to get cash at any other Visa, NYCE, or PLUS ATM. We won't charge you for these withdrawals and, upon request, we will refund you for fees other banks may charge.[32]*

The ATM locator link on RBC's website[33] shows that there are **at least fifty (50) ATM locations** within 18.2 miles of the Sam M. Gibbons United States Courthouse at 801 North Florida Avenue, Tampa, Florida 33602 at which RBC provides access to its accountholders for general business and transactional purposes.[34]  That number of locations increases exponentially when expanding the field of ATM locations to cover the entire region encompassed by the U.S. District Court for the Middle District of Florida.  In light of the foregoing, while RBC may have been truthful when it asserted that it "*currently has no bank branches in Florida*"[35]; that statement is misleading in that it conceals how "continuous and systematic" RBC's general business presence is in the state of Florida and, specifically, in this jurisdiction.

In fact, RBC has an entire marketing campaign directed towards Canadians who travel to the United States, with the majority of that contingent coming to Florida for the winter months. According to a recent report published in the *Orlando Sentinel*, **nearly 3,700,000 Canadians**

---

[32] *See*, June 19, 2017 Declaration of David C. Silver ("Silver. Decl.") at ¶ 3.

[33] http://maps.rbc.com/rbcbank/index.php.

[34] Silver Decl. at ¶ 4.

[35] RBC Motion at 16-17.

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

**visited Florida last year**[36]; and many of them utilize RBC credit.  RBC cannot tell its customers that they can "bank on both sides of the border with ease" and then deny to this Court that RBC customers bank in Florida.

To the extent the Court feels a more well-developed evidentiary record is required to properly evaluate the nature and extent of RBC's presence in the state of Florida, Plaintiff proposes engaging in a brief, expedited, and narrowly-focused course of jurisdictional discovery that would more fully expose the range and depth of RBC's contacts with Florida.  That discovery would impose a minimal burden on the parties, as it would involve only a few written discovery demands propounded upon RBC and, at most, one or two oral examinations of RBC employees which can be scheduled at a location of RBC's choosing.

> **B.**    **No Due Process Concerns Prevent the Court's Exercise of Personal Jurisdiction over RBC**

According to RBC, if the Court finds RBC within the reach of the Florida Long-Arm Statute, the Court must also evaluate whether any due process concerns would prevent the Court from exercising personal jurisdiction over RBC.[37]  As stated by RBC:

> The Eleventh Circuit has recognized that "the determination of whether the assertion of personal jurisdiction over a nonresident defendant comports with due process itself is a two-prong inquiry." First, the Court must decide whether the defendant has the necessary "minimum contacts" with Florida.  Second, the Court must decide whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice."[38]

In the instant matter, no such due process concerns serve as a barrier to Plaintiff's claims.

---

[36] www.orlandosentinel.com/travel/os-bz-visit-florida-tourism-2016-story.html.

[37] RBC Motion at 17.

[38] *Id.*, citing *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990).

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

## 1.   **Minimum Contacts**

When examining whether sufficient minimum contacts exist to warrant personal jurisdiction over a defendant, the court must decide whether the defendant "purposefully directed" his activities at the forum state's residents.  A defendant purposefully directs his activities to the residents of the forum state when there is "some act by which the defendant purposely avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[39]

As demonstrated above, RBC has purposefully directed its activities at Florida residents at, *inter alia*, over 7,100 locations throughout the state.  Even if RBC's presence in the state of Florida were far more isolated and not so pervasive, personal jurisdiction would still be proper.[40]  Moreover, as explained below, RBC's heavy reliance on *Madara* is misplaced; as the dispute in *Madara* did not even involve a resident of the forum state -- something that is entirely distinguishable from the instant dispute which was initiated by Plaintiff, a Florida-based corporation which maintains its principle place of business in Sarasota, Florida.[41]

## 2.   **Fair Play and Substantial Justice**

When determining whether personal jurisdiction over the defendant would comport with traditional notions of fair play and substantial justice, courts should consider:

[T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of

---

[39] *Barson v. Sharr*, 2014 WL 12621198, *4 (M.D. Fla. Aug. 12, 2014), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

[40] *See, e.g., Cronin v. Washington Nat'l Life Ins. Co.*, 980 F.2d 663 (11th Cir. 1993) (holding that personal jurisdiction over non-resident defendant was proper where the only contact the defendant had with Florida was one telephone call to the resident plaintiff).  *See also, Burger King Corp.*, 471 U.S. at 479 (determining that Florida could exercise personal jurisdiction over a defendant although it appeared he had never visited Florida at any point in his life).

[41] AC ¶ 6.

controversies, and the shared interest of the several States in furthering fundamental substantive social policies.[42]

Just as with the defendant in *Barson*, the Court's exercise of jurisdiction over RBC here would not violate traditional notions of fair play and substantial justice. Plaintiff, a Florida resident, alleges that the conduct causing its injuries accrued in Florida.[43] While RBC is likely to incur some modest measure of inconvenience by defending the instant litigation in Florida, Florida has a significant interest in adjudicating the instant litigation that would outweigh any inconvenience to the financial giant RBC. Moreover, Plaintiff's interest in obtaining "convenient and effective relief" and the interstate judicial system's interest in attaining consistent and efficient adjudication of cases outweigh any inconvenience to RBC.

Additionally, RBC has not identified any other forum that is more convenient to RBC in which Plaintiff could properly bring his claims.[44] Any attempt by RBC to move this dispute to Canada would effectively strip Plaintiff of its ability to pursue the relief it seeks -- a policy this Court should not be willing to advance. Furthermore, even if RBC were to identify another jurisdiction in the United States in which RBC suggests Plaintiff should pursue its claim, forcing Plaintiff to initiate its claims in other states where RBC has made no showing that jurisdiction

---

[42] *Barson*, 2014 WL 12621198 at *5 (citations omitted).

[43] *See*, AC ¶ 47 ("*The credit cards proffered for payment were fraudulently presented telephonically and/or electronically to ADVANTAGE TRIM & LUMBER representatives in Sarasota, Florida and were processed for payment by ADVANTAGE TRIM & LUMBER representatives in Sarasota.*") and AC ¶ 48 ("*Additionally, the fraudulent orders placed by the Canadian Crime Syndicate were sourced and fulfilled by ADVANTAGE TRIM & LUMBER representatives in Sarasota, Florida . . . .*").

[44] *Barson*, 2014 WL 12621198 at *5 ("A defendant who has purposefully directed his activities to residents of the forum state 'must present a compelling case' why jurisdiction over him would be unreasonable and why alternative avenues such as change of venue or application of the forum state's choice-of-law rules would be insufficient to address the defendant's alleged burden.").

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

would be more proper than in Florida would impose a substantial burden on the interstate judicial system.[45]

For all the reasons set forth above, Florida's exercise of jurisdiction over RBC clearly does not offend traditional notions of fair play and substantial justice. Therefore, RBC's Motion should be denied on that ground; and Plaintiff should be permitted to pursue his claim against RBC in this Court.

## V.   THE AMENDED COMPLAINT PROPERLY SETS FORTH PLAINTIFF'S CLAIMS

Lastly, in its Motion to Dismiss, RBC argues that the Amended Complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[46]   As demonstrated below, RBC's argument is erroneously placed; and there are no valid grounds upon which the Amended Complaint should be dismissed.

### A.   A Motion to Dismiss is Designed to Examine Factual Allegations, Not Weigh Evidence

In setting forth its argument, RBC appears to be confusing the legal standard applicable to a Motion to Dismiss with the standard applicable to a Motion for Summary Judgment.  On a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) -- like the one RBC has presented to the Court -- the Court's function is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.

> The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  **The court should not weigh the evidence, but merely "determine whether the**

---

[45] Cf. *Madara*, 916 F.2d at 1519 (dismissal warranted because a more proper forum was readily ascertainable).

[46] RBC Motion at 19-25.

> **complaint itself is legally sufficient.**"  Dismissal of a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.[47]

By arguing that Plaintiff's allegations "*lack[ ] any real factual detail,*"[48] RBC is attacking the evidence underlying the Amended Complaint and, as a result, is applying the wrong standard of review. Plaintiff need not proffer, at this time, all evidence it might use at trial to support its claim.  At this stage, all of Plaintiff's allegations -- and all reasonable inferences to be drawn therefrom -- must be accepted as true; and the Court can only dismiss Plaintiff's claims if it appears beyond a doubt that no set of facts can be presented to support Plaintiff's claims.  As applied to the facts of this case, that would require the Court to determine at this time that it appears beyond a doubt that it would be impossible for Plaintiff to prove that one or more employees at RBC were knowingly supplying credit card information to other members of the Canadian Crime Syndicate, who used that information to falsely procure hardwood flooring materials from numerous victims, including Plaintiff.  The well-pleaded allegations of the Amended Complaint do not support such a conclusion.

Moreover, the extent to which RBC employees acted to fuel the Canadian Crime Syndicate is clearly a question of fact which cannot be disposed of on a Motion to Dismiss. "[A]t the motion to dismiss stage, the Court must assume that the well-plead facts of the Complaint are true."  *Rutkowski v. Daimler Chrysler Corp.-UAW Pension Plan*, 2007 U.S. Dist. LEXIS 72416, at *7 (M.D. Fla. Sept. 27, 2007) (denying motion to dismiss and refusing to rule on any issues of fact until after the parties have engaged in discovery).  Accepting as true all of

---

[47] *Nickell v. Pleskovich*, 2008 U.S. Dist. LEXIS 117729, at *10 (N.D. Fla. Jan. 4, 2008) (citations omitted; emphasis added).

[48] RBC Motion at 20.

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

the factual allegations in the Amended Complaint, the Court should rightly deny RBC's request to dismiss the Amended Complaint.

**B.**    **Negligence and Negligent Supervision (Counts I and II)**

In response to Plaintiff's claims that RBC's negligent actions served as a direct and proximate cause of Plaintiff's harm (Count I), RBC acknowledges that under Florida law, "a legal duty [arises] whenever a human endeavor creates a generalized and foreseeable risk of harming others."[49]   However, RBC claims that no such duty exists between itself and Plaintiff, because although Plaintiff alleges to be a foreseeable victim of RBC's negligence, Plaintiff is not an RBC customer.[50]   To support its argument, RBC directs the Court to *Huggins v. Citibank, N.A.*[51], an identity theft case in which the South Carolina Supreme Court held that despite "it [being] foreseeable that injury may arise by the negligent issuance of a credit card," no duty of care flowed from a bank to a non-customer victimized by the use of a wrongfully-issued credit card because "[t]he relationship, if any, between credit card issuers and potential victims of [third party] theft is far too attenuated to rise to the level of a duty between them."[52]

The flawed reasoning of *Huggins* was addressed in *Wolfe v. MBNA America Bank*[53], wherein the United States District Court for the Western District of Tennessee explained that *Huggins'* reliance on the fact that the aggrieved party was not a customer of the bank was misplaced.  The *Wolfe* Court explained:

---

[49] RBC Motion at 20, citing *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 947 (11th Cir. 2014).

[50] RBC Motion at 20-21.

[51] 585 S.E.2d 275 (2003).

[52] *Huggins*, 585 S.E.2d at 277.

[53] 485 F.Supp.2d 874 (W.D. Tenn. 2007).

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

> While the existence of a prior business relationship might have some meaning in the context of a contractual dispute, a prior business relationship has little meaning in the context of negligence law.  Instead, to determine whether a duty exists between parties, the Court must examine all relevant circumstances, with emphasis on the foreseeability of the alleged harm. * * *
>
> With the alarming increase in identity theft in recent years, commercial banks and credit card issuers have become the first, and often last, line of defense in preventing the devastating damage that [third party] theft inflicts.  **Because the injury resulting from the negligent issuance of a credit card is foreseeable and preventable, the Court finds that** under Tennessee negligence law[54], **Defendant has a duty** to verify the authenticity and accuracy of a credit account application before issuing a credit card.[55]

Although the *Wolfe* Court stated that the bank's duty is not without boundaries, the Court held that the duty "requires [the bank] to implement reasonable and cost-effective verification methods that can prevent criminals, in some instances, from obtaining a credit card with a stolen identity.  Whether [the bank] complied with this duty . . . is an issue for the trier of fact."[56]

So too in the instant matter should the Court determine that because the injury suffered by Plaintiff was foreseeable and preventable, dismissal of Plaintiff's claims at this nascent stage of the litigation would be improper.  Throughout the Amended Complaint, Plaintiff has alleged RBC's failure to implement reasonable methods that would have prevented the foreseeable harm of which Plaintiff is a victim.[57]  Plaintiff should be allowed to pursue its claims for negligence

---

[54] The elements of a cause of action for negligence under Tennessee law are identical to those under Florida law. *Compare, Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) with *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007).

[55] *Wolfe*, 485 F.Supp.2d at 882 (emphasis added).

[56] *Id.*

[57] *See, e.g.*, AC ¶ 5 ("*RBC's participation in the Flooring Scam, and* **the bank's failure to create or enforce adequate policies and procedures to prevent the fraud in which its employees participated** *and which caused harm to innocent victims like Plaintiff, has caused widespread harm to multiple victims.*"), AC ¶ 26 ("*Without the participation of the bank employees providing the fraudulent credit cards -- and* **the banks' failed oversight in preventing such actions from**

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

and ultimately have those claims evaluated by the trier of fact, not prematurely cut short at this preliminary pleading stage.

In a recent analogous case, the United States District Court for the Southern District of Florida reviewed a matter in which the victim of theft by a corporate employee's disclosure and/or sale of information that should have been protected by the employee's employers sued the employers for, *inter alia*, negligence based on the employers' security failures.[58] The corporate employers asked that the lawsuit be dismissed, arguing that -- just like RBC is in the instant matter -- they owed no duty to the victim for the employee's concerted acts with a third-party who inflicted direct harm upon the victim.[59]  In *Brush*, the Court brushed aside that argument and held that because "the Plaintiff has articulated an actual, concrete injury that is fairly traceable to the Defendant's alleged malfeasance," the plaintiff not only had standing to sue but that the corporate defendant owed a duty to the plaintiff that was arguably breached.[60]  The Court denied the Motion to Dismiss and allowed the plaintiff to pursue her negligence claim.[61]

---

*being taken by their employees* -- *this scheme would have quickly failed.*"), and AC ¶ 35 ("*As a result of the banks' acts (creating the false credit cards for the Canadian Crime Syndicate) and **omissions (failing to prevent the creation and distribution of the false credit cards to the Canadian Crime Syndicate), several flooring merchants including Plaintiff were unsuspectingly lured into fulfilling fraudulent orders for flooring** on which they would not be paid and which cost the merchants hundreds of thousands of dollars in losses.*").  *See also*, AC ¶¶ 60-63 ("*Defendant did not institute adequate policies and procedures to prevent the very type of fraudulent card issuance that occurred here, of which Plaintiff is a victim.*") and AC ¶¶ 66-68 ("*[H]ad Defendant conducted even a reasonably diligent investigation with respect to its representatives' and agents' actions in that regard, Defendant would have discovered that its representatives and agents were, in fact, rendering harmful assistance to a criminal enterprise that was perpetrating the Flooring Scam.*"; "*Rather than discharge its duties to Plaintiff, **Defendant turned a blind eye to, or failed to exercise reasonable means to discover and correct, active misconduct and negligence on the part of its representatives and agents.**").*

[58] *Brush v. Miami Beach Healthcare Group Ltd.*, 2017 WL 1325534 (S.D. Fla. Feb. 17, 2017).

[59] *Id.* at *2.

[60] *Id.* at *3-4.

[61] *Id.* at *5.

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

Again, Plaintiff asserts that the Amended Complaint demonstrates and articulates an actual, concrete injury that is fairly traceable to RBC's alleged malfeasance; and that as a result of RBC's negligence, Plaintiff suffered damages.  The Amended Complaint adequately sets forth Plaintiff's negligence claims and the grounds therefor, and Plaintiff respectfully submits that RBC's Motion should be denied.

With regard to Plaintiff's claim for negligent retention and supervision (Count II), the same is true.  As the *Wolfe* and *Brush* cases above demonstrate, the law recognizes a legal duty owed by RBC, which Plaintiff alleges has been negligently breached -- a breach that served as the proximate cause of Plaintiff's injuries.  To the extent Plaintiff has thus far been unable to identify the specific employee(s) at RBC who was/were complicit in allowing the Canadian Crime Syndicate fraudulent access to RBC-issued credit cards, Plaintiff should not be denied the reasonable opportunity to cure that issue in discovery, as RBC has thus far refused to volunteer the identity of the employee(s) involved.

### C.     Aiding and Abetting Fraud (Count III)

RBC begins its attack upon Count III of the Amended Complaint by suggesting that "[i]t is uncertain whether Florida law recognizes a claim for aiding and abetting fraud."[62]  RBC's feigned ignorance on that point is disingenuous, as Florida undoubtedly acknowledges that such a cause of action.  "Although no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists."[63]

---

[62] RBC Motion at 22.

[63] *Freeman v. JPMorgan Chase Bank, N.A.*, 2017 WL 128002, *6 (11th Cir. Jan. 13, 2017).

**SILVER LAW GROUP**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 755-4799 · Facsimile (954) 755-4684
www.silverlaw.com

Despite its non-belief that the cause of action even exists, RBC correctly states that a tort claim for aiding and abetting fraud has three elements: (1) the existence of "an underlying fraud"; (2) that "[t]he defendant had knowledge of the fraud"; and (3) that the defendant "provided substantial assistance to advance the commission of the fraud."[64]   What RBC misstates, however, is whether Plaintiff has properly alleged facts supporting each of those elements.   A review of the Amended Complaint shows that Plaintiff has indeed set forth adequate facts to support each of those elements:

| ELEMENT OF CLAIM FOR AIDING AND ABETTING FRAUD | RELEVANT PARAGRAPH(S) IN AMENDED COMPLAINT |
|---|---|
| Existence of an underlying fraud | AC ¶¶ 4 and 20 [*See generally*, AC ¶¶ 13-22 ("The Flooring Scam")] |
| Defendant had knowledge of the fraud | AC ¶¶ 3, 34, 54, and 75 |
| Defendant provided substantial assistance to advance commission of the fraud | AC ¶¶ 5, 25-27, 33-35, 44, and 72 |

With regard to the final element of the cause of action, it is important to note that "substantial assistance occurs when a defendant affirmatively assists, helps conceal[,] or fails to act when required to do so, thereby enabling the breach to occur."[65]   The Amended Complaint alleges both affirmative assistance by RBC and RBC's failure to act when required to do so -- both of which enabled the breach to occur.   As such, RBC's Motion is contradicted by the actual allegations in the Amended Complaint; and the Motion must be denied accordingly.

---

[64] *Id.  See also*, RBC Motion at 22 (citing same elements of cause of action).

[65] *Freeman*, 2017 WL 128002, at *7 (sustaining non-customer plaintiff's claim against bank for aiding and abetting fraud and holding that bank provided substantial assistance through its inaction; "[A] bank's inaction -- that is, its failure to stop the theft of [asset it was obligated to protect] -- can constitute substantial assistance.").

**D.**    **Civil Conspiracy (Count IV)**

Lastly, the Amended Complaint asserts a cause of action against RBC for Civil Conspiracy.  RBC argues in its Motion that Plaintiff has not properly pleaded or supported its claim.[66]  In presenting its position, though, RBC misstates or misunderstands the law applicable to Plaintiff's claim.

> In order to properly state a claim for civil conspiracy, a plaintiff must allege "'(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'"  * * *  **Despite the requirement of an underlying tort or wrong, "[e]ach co-conspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'"**

*Johnson Law Group v. Elimadebt USA, LLC*, 2010 U.S. Dist. LEXIS 51079, at *19-20 (S.D. Fla. May 24, 2010) (emphasis added).  Even if RBC were not alleged to have committed the tort or statutory violation underlying the civil conspiracy -- *i.e.*, the fraudulent Flooring Scam, which is quite clearly set forth in the Amended Complaint -- that point is immaterial.  *See, Pafumi v. Davidson*, 2007 U.S. Dist. LEXIS 43138, at *4 (S.D. Fla. June 14, 2007) (finding it unnecessary for each defendant charged with conspiracy to be accused of making misrepresentations as long as at least one co-conspirator committed such an overt act).  Plaintiff has adequately pleaded its claim for civil conspiracy and has alleged that RBC knew of the scheme and assisted in some way.[67]

---

[66] RBC Motion at 24-25.

[67] *See*, AC ¶ 3 ("*RBC was among the banks working with, and providing vital tools of theft to, the criminal syndicate.*"),     AC ¶ 4 ("*As a result of the fraud that persisted at RBC and its fellow participating banks, several hardwood flooring retailers -- including Plaintiff -- were victimized by this scam (the "Flooring Scam") and have suffered hundreds of thousands of dollars, if not millions of dollars, in damage.*"), and AC ¶ 5 ("*RBC's participation in the Flooring Scam, and the bank's failure to create or enforce adequate policies and procedures to prevent the fraud in which its employees participated and which caused harm to innocent victims like Plaintiff, has caused widespread harm to multiple victims.*").  *See also*, AC ¶¶ 13-22 ("The Flooring Scam") and ¶¶ 23-36 ("Several Banks, including RBC, Fueled the Flooring Scam with Fraudulent Credit Cards").

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com

Moreover, RBC incorrectly posits that Plaintiff's civil conspiracy claim must be dismissed because Plaintiff has purportedly not satisfied the heightened pleading standard of Fed.R.Civ.P. 9(b).  RBC's argument has previously been rejected by this Court:

> [Defendants] contend that the civil conspiracy count is subject to heightened pleading requirements, similar to those set forth in Rule 9, Fed. R. Civ. P., which require the plaintiff to state the who, what, where, when, and how of the conspiracy.  The Court disagrees with [Defendants'] errant position.  [Plaintiff's] allegations are subject only to the standard set forth in Rule 8(a), Fed.R.Civ.P., and are adequate at this preliminary juncture to state a claim for civil conspiracy.[68]

Because Plaintiff has adequately pleaded its civil conspiracy claim against RBC, Count IV should not be dismissed as requested by RBC.

## VI.   **CONCLUSION**

For the foregoing reasons,[69] Plaintiff respectfully requests the Court deny RBC's Motion to Dismiss the Amended Complaint.

Respectfully submitted,

**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 755-4799
Facsimile:   (954) 755-4684

By: _____
DAVID C. SILVER
Florida Bar No. 572764
E-mail:   DSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail:   JMiller@silverlaw.com

---

[68] *Lobo Capital Partners, LLC v. Forte*, 2013 U.S. Dist. LEXIS 44619, at *7 (M.D. Fla. Mar. 28, 2013).

[69] With regard to any arguments raised in Defendant's motion that are not specifically addressed herein, Plaintiff does not concede or acquiesce to Defendant on those points.  Plaintiff simply relies on the strength and viability of the allegations as they have been set forth in the Amended Complaint without the need for further exposition.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this __19th__ day of June 2017 by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participant(s): **EMILY Y. ROTTMANN, ESQ.**, MCGUIRE WOODS LLP, *Counsel for Defendant, Royal Bank of Canada*, 50 North Laura Street - Suite 3300, Jacksonville, FL 32202, E-mail: ERottmann@mcguirewoods.com; **NOREEN KELLY, ESQ.**, MCGUIRE WOODS LLP, *Counsel for Defendant, Royal Bank of Canada*, 1345 Avenue of the Americas - Seventh Floor, New York, NY 10105-0106, E-mail: NKelly@mcguirewoods.com; and **KARLA L. JOHNSON, ESQ.**, MCGUIRE WOODS LLP, *Counsel for Defendant, Royal Bank of Canada*, 625 Liberty Avenue, EQT Plaza - 23rd Floor, Pittsburgh, PA 15222, E-mail: KJohnson@mcguirewoods.com.

_____

DAVID C. SILVER

**SILVER LAW GROUP**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 755-4799 • Facsimile (954) 755-4684
www.silverlaw.com