UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADVANTAGE TRIM & LUMBER
COMPANY, INC.,

    Plaintiff,

v.                                          CASE NO. 8:17-cv-523-T-26AAS

ROYAL BANK OF CANADA,

    Defendant.
                                      /

**O R D E R**

Before the Court is Defendant's Special Appearance and Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 23), Plaintiff's Memorandum in Opposition (Dkt. 28), and Defendant's Reply (Dkt. 33).[1] After careful consideration of the submissions of the parties, the applicable law, and the file, the Court concludes that the motion should be granted but without prejudice to affording Plaintiff one last opportunity to amend its complaint.

Defendant seeks to dismiss the amended complaint based on lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim for relief in

---

[1] The Court finds oral argument unnecessary because the issues may be decided on the written submissions. See docket 30 (Request).

contravention of the Twombly-Iqbal standard.[2]  This diversity action involves a retail hardwood flooring scam perpetrated by a crime syndicate and employees at multiple banks, one of which is Defendant Royal Bank of Canada and its wholly-owned or controlled subsidiaries (RBC).[3]  The bank employees would fraudulently obtain credit cards associated with actual account numbers but bearing fake names of individuals and businesses.[4]  Members of the crime syndicate would place orders on the telephone or internet using the false names on the credit cards obtained from the bank insiders for large amounts of hardwood flooring from flooring retailers in the United States like Plaintiff.[5]  The shipments would be immediately sent to Canada, and the criminal syndicate would abscond with the flooring for sale on the secondary market long before retailers like Plaintiff could discover that payment had been made with fraudulently issued credit cards.[6]

Around May 1, 2015, a "Carl Souza" with "Gerd Furniture Stores" of Canada contacted Plaintiff at its Sarasota, Florida headquarters.[7]  A shipper picked up the flooring

---

[2]  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[3]  See docket 20, paragraphs 1, 7.

[4]  See docket 20, paragraph 29.

[5]  See docket 20, paragraphs 2, 30 and 31.

[6]  See docket 20, paragraphs 2, 20, 21 and 22.

[7]  See docket 20, paragraph 37.

from a North Carolina facility of Plaintiff's on May 8, 2015.[8] The criminal syndicate continued to make more purchases before Plaintiff found out about the fraudulent credit card transactions.[9] This lawsuit ensued.

## Amount in Controversy

The amended complaint alleges Plaintiff suffered at a minimum $372,000, which represents the payment not received "for the orders it had sourced and fulfilled for Mr. Souza/Gerd Furniture."[10] Amounts above and beyond $372,000, were suffered in penalties and costs charged by suppliers, third-party credit card processors, and Plaintiff's bank.[11] RBC argues that the $372,000 encompasses more than the damages attributable to RBC alone, but rather includes losses caused by credit cards issued by other Canadian banks. RBC contends that Plaintiff is not permitted to aggregate claims in order to reach the jurisdictional amount in controversy of over $75,000. See Wonders Trust v. Deaton, Inc., 200 F.R.D. 473, 478 (M.D. Fla. 2000) ("In an action against multiple unrelated defendants, a plaintiff relying on § 1332 must satisfy the amount-in-controversy requirement with respect to each individual defendant, unless the defendants may be held

---

[8]  See docket 20, paragraph 43.

[9]  See docket 20, paragraphs 45, 47 and 48.

[10]  See docket 20, paragraphs 12 and 52.

[11]  See docket 20, paragraph 53.

jointly liable to the plaintiff.") (citation omitted).[12] "Generally, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (citation and internal quotations omitted).

Plaintiff correctly notes that this action is not an action against multiple unrelated defendants. Plaintiff seeks liability for the full gamut of damages against RBC based on its actions undertaken in the conduct of the criminal syndicate. Even assuming damages are awarded, if a set-off is ultimately determined which reduces a plaintiff's recovery, any such set-off does not change whether the amount in controversy exists when the lawsuit begins. O'Toole v. Napa Home & Garden, Inc., No. 8:11-cv-2724-T-23AEP, 2012 WL 12904228, at *1 (M.D. Fla. June 26, 2012) (denying motion to dismiss because defendant failed to "demonstrate to a legal certainty that the plaintiff cannot recover more than $75,000" and "that Florida law might require a set-off at final judgment that reduces . . . final recovery to or below $75,000 does not affect the jurisdictional amount in controversy at the outset of litigation."). RBC's motion fails to establish to a legal certainty that Plaintiff cannot recover more than $75,000.

## Personal Jurisdiction

---

[12] See also Kelly v. Davis, No. 3:10-cv-392-MCR/EMT, 2012 WL 967442 (N.D. Fla. Mar. 22, 2012) (same) (citation omitted); O'Dell v. Doychak, No. 6:06-cv-677-Orl-19DAB, 2006 WL 2092283, at *4 n.4 (M.D. Fla. July 26, 2006) (same) (citation omitted).

The amended complaint alleges personal jurisdiction by reason of "(a) Defendant is a business entity operating, present, and/or doing business within this jurisdiction, and (b) a substantial portion of the tortious conduct that caused Plaintiff's damages occurred within this jurisdiction."[13]  Other pertinent allegations include that Defendant is registered with the United States Federal Reserve System and that Defendant operates in the United States "through its wholly-owned and/or controlled subsidiaries" under its brand name.[14]  Defendant filed a declaration in support of its position that it has a "limited U.S. presence."[15]  The declaration avers that Royal Bank of Canada (RBC) is a Canadian bank that operates 1,419 branches worldwide with nine offices in the United States, none of which are located in Florida.[16]  All administration of RBC credit cards occurs in Canada.[17]  RBC's subsidiaries have offices in Florida, but none issue or administer credit cards or process credit card transactions.[18]  Plaintiff filed counter submissions showing from RBC's own website that not only does RBC tout its ability to permit Canadians to bank in

---

[13] See docket 20, paragraph 10.

[14] See docket 20, paragraph 7.

[15] See docket 23-1, paragraph 3.

[16] See docket 23-1, paragraphs 3 and 5 (Declaration of Paul Serritella, Director and Senior Counsel of RBC.

[17] See docket 23-1, paragraph 6.

[18] See docket 23-1, paragraph 5.  Although the amended complaint includes allegations that

America, but it provides numerous automated teller machine (ATM) locations just within a 20-mile radius of the Tampa courthouse.[19]

Plaintiff's allegations assert two grounds for specific, as opposed to general, jurisdiction under the Florida long-arm statute – sections 48.193(1)(a)1. and (1)(a)2. for "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state" and "[c]ommitting a tortious act within this state." Before addressing specific jurisdiction, however, the Court must determine whether the amended complaint alleges a cause of action. Hatton v. Chrysler Canada, Inc., 937 F.Supp. 2d 1356, 1363 (M.D. Fla. 2013) (following Eleventh Circuit precedent of PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010) that court must determine whether complaint states a cause of action before whether specific personal jurisdiction exists under long-arm statute). In the four-count amended complaint, Plaintiff asserts negligence, negligent retention and supervision, aiding and abetting fraud, and civil conspiracy.

RBC takes issue with the lack of sufficient facts as well as the failure to plead all of the elements of the causes of action. With respect to negligence, this action is distinguishable from those cases cited by RBC because here, the credit cards were issued by employees of the bank with alleged complicity in knowingly pairing the cards with already existing customer accounts. As to negligent retention and supervision, RBC

---

[19] See docket 29.

argues that the allegations are insufficient as to both duty and forseeability that its employees would commit the fraud. See Bello v. Johnson, 442 F.App'x 477, 480 (11th Cir. 2011) (affirming dismissal of complaint seeking negligent supervision and retention by the county because no alleged facts established forseeability that employees would have allegedly used false information to obtain an arrest warrant, having found attachments to motion to dismiss negated used of false information) (unpublished opinion). Plaintiff alleges that RBC "knew or should have known" that its agents provided to the crime syndicate unauthorized access to RBC accounts.[20] The Court finds that at this stage of the proceedings, however, the amended complaint has alleged facts that could give rise to a negligent retention or supervision claim. See McLaren v. Celebrity Cruises, Inc., No. 11-23924-civ, 2012 WL 1792632, at *7 (S.D. May 16, 2012) (denying motion to dismiss and distinguishing between the pleading stage and summary judgment stage in negligent retention claims, citing Iqbal, and recognizing that defendant-employer may offer facts of its own which may prove it is not liable for misconduct on summary judgment).

Aiding and abetting fraud is a cause of action in Florida, which the Court finds has been sufficiently alleged through knowledge of the underlying fraud and substantial assistance through inaction. Cf. Freeman v. JPMorgan Chase Bank, N.A., 675 F. App'x 926, 934-35 (11th Cir. 2017) (finding that knowledge of the underlying fraud and

---

[20] See docket 20, paragraphs 64 and 65.

substantial assistance through inaction meet the requirements of aiding and abetting fraud). Similarly, the Court finds the civil conspiracy count sufficient because RBC as a co-conspirator allegedly knew of the underlying wrong and assisted in its persistence. See Johnson Law Group v. Elimadebt USA, LLC, No. 09-civ-81331, 2010 WL 2035284, at *7-8 (S.D. Fla. May 24, 2010) (finding complaint stated claim of civil conspiracy based on sufficient pleading of underlying tort and noting that each co-conspirator "need only know of the scheme and assist in some way").

Having determined that the amended complaint states causes of action under Florida law, the Court may now turn to personal jurisdiction. Specific jurisdiction derives from "causes of action arising from or related to a defendant's actions within the forum." PVC Windoors, 598 F.3d at 808 (quotation omitted). General jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation and therefore is determined using a stricter standard than specific jurisdiction. See Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). As reiterated by the Supreme Court, a defendant's activities must be "so continuous and systematic as to render [the defendant] essentially at home in the forum state." Daimler AG v. Bauman, ___ U.S. ___, 134 S.Ct. 746, 749, 187 L.Ed.2d 624 (2014) (quotation omitted). Even after either specific or general jurisdiction under the long-arm statute is met, further analysis must also evaluate whether federal constitutional minimum contacts and traditional notions of fair play have been satisfied. See Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295-96 (11th

Cir. 2009). Minimum contacts involves three inquiries, one of which requires that the defendant's contacts must be related to or have given rise to the cause of action. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996).

Interestingly, Plaintiff's response is devoid of any argument supporting its allegations of specific jurisdiction of either "carrying on a business" or "committing a tort" under Florida's long-arm statute. The Court can only assume that Plaintiff has abandoned specific personal jurisdiction over the nonresident RBC based on either of these grounds. Plaintiff devotes its entire argument to general jurisdiction under section 48.193(2), which requires that the defendant engage in "substantial and not isolated activity" within the state. The Court is perplexed because the amended complaint does not allege general jurisdiction, and general jurisdiction is more difficult than specific jurisdiction to establish. Giving the Plaintiff one more opportunity to replead the jurisdictional allegations under any theory, the Court grants the motion as to personal jurisdiction without prejudice. Plaintiff should prepare the allegations in anticipation of RBC's position that PNC is an entirely separate entity from RBC and that RBC does not have connections "so substantial" to be an "exceptional" case where a foreign corporation is "at home" in a forum other than its principal place of business.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Special Appearance and Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 23) is **granted** without prejudice to Plaintiff filing an amended complaint with sufficient allegations of

personal jurisdiction within ten (10) days. Defendant shall file its response within ten (10) days of service.

**DONE AND ORDERED** at Tampa, Florida, on July 10, 2017.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record